**Ottis Mayo JONES**

v.

**Gertrude BALES et al.**

**Civ. A. No. 16070.**

United States District Court,
N. D. Georgia,
Atlanta Division.

July 13, 1972.

Supplemental Opinion Sept. 19, 1972.

454

456

Ottis Mayo Jones, pro se.

John E. Dougherty, Atlanta, Ga., McCampbell, Young, Bartlett & Woolf, Louis C. Woolf, Knoxville, Tenn., for Cheatham and Waggoner.

Gertrude Bales, pro se.

John W. Stokes, Jr., U. S. Atty., Beverley B. Bates, Asst. U. S. Atty., Atlanta, Ga., for Kirksey and Taylor.

SIDNEY O. SMITH, Chief Judge.

This civil rights action brought pursuant to 42 U.S.C. §§ 1983, 1985 and Bivens v. Six Unknown Fed. Narcs. Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1970), is before the Court on motions to dismiss or alternatively for summary judgment filed by defendants Cheatham, Waggoner, Kirksey, and Taylor and on motions for default judgment and summary judgment filed by plaintiff.

Plaintiff's motion for default judgment rests on the fact that, although more than twenty days have passed since the complaint was filed, defendants Waggoner, Cheatham, Kirksey, and Taylor have not yet filed their answers. Plaintiff's motion for default judgment is denied; where a motion to dismiss has been filed, no answer need be filed until ten days after the Court disposes of the motion. Fed.R.Civ.P. 12(a).

In respect to defendants' motions to dismiss, Waggoner and Cheatham specifically contend (1) this Court is an improper venue, (2) plaintiff's allegations of conspiracy are insufficient as a matter of law to state a claim and (3) any claim arising in Tennessee is barred by the applicable Tennessee statute of limitation, T.C.A. § 28–304. Defendants Kirksey and Taylor in their motion to dismiss argue that plaintiff's claims are barred by Tennessee's and Georgia's statutes of limitations, T.C.A. § 28–304 and Ga.Code § 3–1004, and that the complaint generally fails to state a claim.

For the purposes of considering these motions to dismiss, plaintiff's well-pleaded allegations are assumed to be true. Campbell v. Beto, 460 F.2d 765 (5th Cir. April 18, 1972). Plaintiff makes these allegations: On or about January 10, 1969, in the northern district of Georgia, defendants and others entered into a conspiracy to deprive plaintiff of his constitutional rights and to railroad him to prison. In furtherance of the conspiracy, the defendants and others have committed several overt acts. On January 10, 1969, defendants

caused plaintiff to be arrested on an illegal detainer warrant as plaintiff was released from the federal prison in Atlanta. Plaintiff was confined in a nearby county jail where he was physically abused. On January 28, 1969, the defendants acting under color of state law arranged for plaintiff's release on bail. Once freed on bail, defendants imprisoned petitioner in an apartment in Atlanta. At the apartment, the defendants, acting through an attorney, who is now deceased, and other associates, gave plaintiff a false driver's license, a credit card and stolen money orders and ordered plaintiff to cash the stolen money orders and to turn the cash received over to defendant Bales. On or about February 21, 1969, defendant Bales planted approximately thirty stolen postal money orders on her person and then persuaded plaintiff to accompany her to Knoxville, Tennessee, at which place defendants planned to entrap and arrest plaintiff by using evidence which had been forged and planted by them. On February 22, 1969, and prior thereto, defendant Bales and her Atlanta associates falsely made and forged all of the stamp markings, the amounts, and all of the handwriting on the face of United States Postal money order No. 5,616,352,675. On February 22, 1969, defendant Bales, while sitting in plaintiff's rented vehicle in front of an A & P food store, ordered plaintiff to take the forged money order into the A & P store, endorse it, and get it cashed. When the store would not cash the money order, plaintiff left the store; and within twenty minutes, plaintiff was stopped in his car and arrested by Knoxville City Police Officer Cheatham. Subsequently, defendants Bales, Waggoner, a Knoxville city detective, and Kirksey, a federal postal inspector, caused plaintiff to be jailed while plaintiff's automobile was unlawfully searched by them. Thirty money orders and other incriminating evidence were found during the search. At plaintiff's criminal trial in Tennessee, a federal district judge ordered all evidence gained by the search suppressed. Nevertheless, plaintiff was convicted of uttering stolen money postal orders by the Tennessee federal court. Later, plaintiff was convicted in a Florida federal court for similar crimes. Plaintiff is now confined in the federal prison in Atlanta, where defendants, acting through their conspirators, continue to deprive plaintiff of his federal rights.

■■ The elements necessary for a cause of action under 42 U.S.C. § 1985(3) are (1) a conspiracy by the defendants, (2) with a purpose of depriving the plaintiff of equal protection of the law or equal privileges or immunities under the law, (3) a purposeful intent to discriminate, *i. e.*, there must be some racial or perhaps otherwise class based invidiously discriminatory animus behind the conspirators' action, and (4) injury to the person or property of the plaintiff or his deprivation of a right or privilege as a citizen of the United States resulting from actions in the furtherance of the conspiracy. *Compare* Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) *with* Granville v. Hunt, 411 F.2d 9, 11 (5th Cir. 1969). *See also* Jacobson v. Industrial Foundation of Permian Basin, 456 F.2d 258 (5th Cir. 1972). Applying this standard to the complaint *sub judice*, it seems the complaint fails to state a claim under 42 U.S.C. § 1985(3). Petitioner has failed to allege any facts that would tend to show that the alleged conspirators were motivated by some racial or otherwise class-based invidiously discriminatory animus.

■ To maintain a cause of action under 42 U.S.C. § 1983 plaintiff must show (1) that he has been deprived of a right, privilege or immunity secured by the Constitution and laws of the United States, (2) that the defendants subjected plaintiff to the deprivation or "cause[d]" him to be so subjected, and (3) that the defendants acted "under color of any statute, ordinance, regula-

tion, custom or usage of any State . . . ." Kletschka v. Driver, 411 F. 2d 436, 447 (2d Cir. 1969).

█ For a claim under 42 U.S.C. § 1983, a conspiracy is not a vital element. Nevertheless, a conspiracy may be used as the legal mechanism through which to impose liability on each and all defendants without regard to the person doing the particular act. Mizell v. North Broward Hosp. Dist., 427 F.2d 468, 472–473 (5th Cir. 1970); Nesmith v. Alford, 318 F.2d 110, 126 (5th Cir. 1963). For example, in this case defendants Bales, a private citizen, and Kirksey and Taylor, federal officers, could not be sued under section 1983 absent the allegation of conspiracy with persons, such as Cheatham and Waggoner, who were acting under color of state law.

█ Regarding this action as one pursuant to 42 U.S.C. § 1983, the Court is faced *in limine* with venue issues. There is no special venue statute for civil rights actions. 1 J. Moore, Federal Practice ¶ 0.144 [17] at 1680 (1964). Thus, the general venue statute 28 U.S. C. § 1391 (1972 Supp.) controls. Title 28 U.S.C. § 1391(b) provides "[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose." Since all the defendants here do not reside in this district, the action must be brought where the claim arose. Where the action is based on an alleged conspiracy within the meaning of 42 U.S.C. § 1985(3), the action may be brought in the district where the conspiracy was formed or in any district where an overt act occurred. *Cf.* Finley v. United States, 271 F.2d 777, 781 (5th Cir. 1959) (criminal con-

spiracy may be prosecuted either at the place where the conspiracy was formed or where any of the overt acts were committed). A different venue question is presented, however, by a 42 U.S.C. § 1983 action in which a conspiracy is alleged by the plaintiff simply to spread liability. Where the action is based on an alleged conspiracy posited on 42 U.S. C. § 1983, each overt act is a separate cause of action. Mizell v. North Broward Hosp. Dist., 427 F.2d 468, 475 (5th Cir. 1970). Where several overt acts appear in the complaint, venue must be proper as to each cause of action. 3A J. Moore, Federal Practice ¶ 18.07 [1.–1] at 1906 (2 ed. 1970). Since defendants Cheatham and Waggoner have expressly objected to this court as a venue for the trial of section 1983 claims against them based on overt acts in Tennessee, those claims are dismissed. Similarly, plaintiff's Fourth Amendment *Bivens* claim [1] arising from the search of plaintiff's automobile in Tennessee is dismissed as to Cheatham and Waggoner.

█ Defendants Kirksey, Taylor and Bales have not expressly objected to venue and, thus, have waived the defense of improper venue. *See* Fed.R.Civ.P. 12 (h)(1). Instead, these defendants, along with Cheatham and Waggoner, argue that Tennessee's one-year statute of limitation bars suit under either 42 U.S.C. § 1983 or *Bivens* on claims arising from overt acts in Tennessee. *See* T.C.A. § 28–304.

There is no federal statute of limitations applicable to civil rights actions; instead a state statute is applied. Because the statute of limitations that would be applied by a court of the state in which this court sits differs from the statute of limitations of Tennessee,

1. In Bivens v. Six Unknown Fed. Narcs. Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1970), it was held that a federal agent's violation of the Fourth Amendment will give rise to a federal cause of action for damages. Relying on the analogous 42 U.S.C. § 1983, this Court holds that persons other than federal officers may be sued pursuant to *Bivens* if they acted in concert with federal officers. The search of plaintiff's automobile in Tennessee by defendants gives rise to the *Bivens* claim in this action.

where these claims arose, this Court must decide which State's limitation applies.

▮▮▮▮▮ A Georgia court hearing a tort action which arose in a state other than Georgia will apply Georgia's statute of limitations to the action. Baron Tube Co. v. Transport Ins. Co., 365 F.2d 856, 860 (5th Cir. 1966); Blue v. Maico, 217 F.Supp. 747 (N.D.Ga.1963); O'Shields v. Georgia Pac. Ry. Co., 83 Ga. 621, 624–626, 10 S.E. 268 (1889). Georgia Code section 3–1004 provides for a two-year statute of limitation in actions for injuries to persons, and this limitation is applicable to civil rights actions. Shank v. Spruill, 406 F.2d 756 (5th Cir. 1969). Since plaintiff has apparently been imprisoned almost constantly since January, 1969, whether imprisonment tolls the statute of limitations is important. Georgia Code section 3–802 provides that the running of limitation statute is tolled during the imprisonment of a potential plaintiff. Thus, if this Court is required to apply Georgia's limitation statutes, because Georgia is the state in which this Court sits, plaintiff's claims arising in Tennessee will not be barred. Tennessee Code section 28–304 provides for a one-year period of limitation. Moreover, the running of the Tennessee statute of limitations is not tolled by plaintiff's imprisonment. Harrison v. Wright, 457 F.2d 793 (6th Cir. 1972); Bledsoe v. Stokes, 60 Tenn. 312 (1872). Therefore, if the applicable statute of limitations is that of the state in which the claims arose, plaintiff's claims based on events in Tennessee will be barred.

The Fifth Circuit Court of Appeals has held that "when, as here, Congress has provided . . . for a federal claim, the federal courts must borrow the applicable statute of limitations from the *state in which it sits*." McGuire v. Baker, 421 F.2d 895, 898 (5th Cir. 1970) (emphasis added); *accord*, Knowles v. Carson, 419 F.2d 369, 370 (5th Cir. 1969); Beard v. Stephens, 372 F.2d 685, 688 (5th Cir. 1967). In Shank v. Spruill, 406 F.2d 756 (5th Cir. 1969) (per curiam), the court in a very brief opinion held that a 42 U.S.C. § 1983 action in which the plaintiff alleged that two Georgia police officers forcibly brought him back from Florida to Georgia to stand trial was barred by Georgia's statute of limitations. Nevertheless, the law may not be as settled as it first appears. In *McGuire, Knowles* and *Beard*, the states in which the district courts sat were also the states in which the respective actions arose; no conflict of law issue was presented. In *Shank*, there was no discussion of the possible application of the Florida limitation statute on the theory that the action might have arisen in that state.

The Sixth Circuit Court of Appeals has held that "[s]ince the Civil Rights Act itself contains no limitation period, the courts will look to the most analogous statute of limitations of *the state where the cause of action arose*." Mulligan v. Schlacter, 389 F.2d 231, 233 (6th Cir. 1968) (emphasis added); *accord*, Harrison v. Wright, 457 F.2d 793 (6th Cir. 1972); Crosswhite v. Brown, 424 F.2d 495 (10th Cir. 1970); Butler v. Sinn, 423 F.2d 1116 (3d Cir. 1970). Again, however, the significance of these cases is undermined, because in each case the state in which the federal trial court sat and the state in which the action arose were the same.

[16] Although the ordinary rule appears to be that the limitation statute of the forum should be applied, a rule that a federal court should apply in civil rights actions the limitations of the state where the action arose has at least one plain advantage; it would discourage forum shopping. Because there seems to be no precedent in this circuit that is squarely on point, this Court is greatly tempted to hold that, where a civil rights action arose in one state but is brought in another, a federal district court should apply the statute of limitations of the state in which the action

arose. Instead, however, this Court applies the standard expressly enunciated *McGuire* and *Beard* and holds that none of petitioner's claims are barred by the applicable Georgia statute of limitations.

 Invoking Shank v. Spruill, 406 F.2d 756 (5th Cir. 1969), defendants Kirksey and Taylor next contend that as long as plaintiff's convictions stand a civil rights action based on allegations of an unlawful arrest and search is inappropriate. In respect to the Tennessee arrest this is true; thus, any claim for damages based on that allegedly unlawful arrest is dismissed. The evidence gained from the allegedly unlawful search in Tennessee was not used to convict plaintiff in either his Florida or Tennessee trial. United States v. Jones, 457 F.2d 697 (5th Cir. January 14, 1972). Since a showing that the search of plaintiff's automobile was unlawful would have no bearing on the validity of plaintiff's convictions, the underlying rationale of *Shank, i. e.,* that constitutional claims connected with the validity of a conviction should first be raised in attacks on the conviction, is not in point. Thus, plaintiff's claim based on the alleged unlawful search is not dismissed.

 Turning to the claims resting on overt acts in Georgia, this Court hereby dismisses all of plaintiff's claims arising from alleged deprivation of federal rights at the Atlanta federal prison subsequent to his release on January 10, 1969. These claims are not well-pleaded, because plaintiff has failed to allege facts that would tend to link defendants with what transpired at the prison after his release in January, 1969. A mere vague, conclusory statement that the defendants have conspired with prison officials to continue to deprive plaintiff of his federal rights now that he has been reimprisoned is insufficient to state a claim. *See* Granville v. Hunt, 411 F.2d 9, 11 (5th Cir. 1969). The complaint's conspiracy allegations are far too vague to serve as a link between state officers and federal prison officers necessary to show that plaintiff's alleged deprivation of rights in a federal prison by federal officers amounts to a deprivation of federal right under color of state law within the meaning of 42 U.S.C. § 1983.

 Plaintiff's claim that defendants, acting with others and under color of state law, unlawfully arrested and imprisoned petitioner upon his release from prison in Atlanta in 1969 states a claim under 42 U.S.C. § 1983.

In respect to the undismissed claims, the Court has considered the various affidavits submitted by the parties to support their respective motions for summary judgment. The affidavits submitted by plaintiff repeat the complaint. The affidavits submitted by defendants are essentially general denials of wrong doing. Applying the Rule 56 standard, no party is due summary judgment. *See* Fed.R.Civ.P. 56(c). Accordingly, the motions for summary judgment are denied.

Finally, this Court, after considering all of plaintiff's pleadings, orders each and every claim dismissed as to defendant Taylor. Defendant Taylor is a federal postal inspector stationed in Florida. Plaintiff has alleged no facts showing that Taylor alone has deprived plaintiff of any rights and has alleged no facts that would tend to show even a frail link between Taylor and any conspiracy that might have deprived plaintiff of any rights.

In summary this Court has:

(1) denied plaintiff's motion for default judgment,

(2) dismissed all claims based on 42 U.S.C. § 1985(3),

(3) dismissed as to Cheatham and Waggoner any claim arising from events in Tennessee,

(4) dismissed any claim based on the alleged unlawfulness of plaintiff's arrest in Tennessee,

(5) dismissed any claim based on deprivation of federal rights at the Atlanta

federal prison subsequent to January 10, 1969,

(6) dismissed all claims against Taylor, and

(7) denied all motions for summary judgment.

In its present posture, these civil rights claims are still viable:

(1) a claim against all defendants except Taylor pursuant to 42 U.S.C. § 1983 for the allegedly unlawful arrest and imprisonment of plaintiff in Georgia and

(2) a claim pursuant to 42 U.S.C. § 1983 or Bivens v. Six Unknown Fed. Narcs. Agents against defendants Bales and Kirksey for the allegedly unlawful search of plaintiff's automobile in Tennessee.[2]

It is so ordered.

## SUPPLEMENTAL OPINION

This is a civil rights action for damages in which a convicted felon is plaintiff and state and federal law enforcement officers and a private citizen are defendants. Plaintiff has been proceeding in forma pauperis since his original complaint was filed in January of this year. After issuing several orders in this action and periodically reviewing the case file over the last eight months endeavoring to crystallize any real issues for trial, this Court has become convinced that this action is frivolous and perhaps malicious. Accordingly, the court is compelled to dismiss the same pursuant to 28 U.S.C. § 1915(d).

Plaintiff is an inmate at the federal prison in Atlanta. He is currently imprisoned for uttering stolen postal money orders. His convictions followed federal trials in Tennessee and Florida.

Both convictions have been affirmed. *See* United States v. Jones, 457 F.2d 697 (5th Cir.1972); United States v. Jones, 438 F.2d 1199 (6th Cir.), cert. denied 404 U.S. 913, 92 S.Ct. 239, 30 L.Ed.2d 187 (1971).

On January 6, the Court received the original complaint in this case. The complaint invoked Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and stated in a conclusory manner that plaintiff's fourth amendment rights had prior to his imprisonment been violated by several persons including certain federal officers. When liberally construed, the complaint, although vague and conclusory, raised an issue serious enough to permit the complaint to be filed in forma pauperis. *See generally* Campbell v. Beto, 460 F.2d 765, 768 (5th Cir. 1972). The complaint was ordered filed, but service of process was delayed to allow petitioner to file a more definite statement of the facts underlying his conclusory allegation that his fourth amendment rights had been violated. The more definite statement was a necessary effort to satisfy the Court that the case was not so frivolous that a response would be unnecessary. At the time, the Court was particularly concerned about venue and statute of limitation problems. On January 20, plaintiff filed his more definite statement as a supplemental pleading. The supplemented complaint alleged constitutional violations other than those involving the fourth amendment and invoked 42 U.S.C. § 1983 and 42 U.S.C. § 1985 as well as *Bivens*. Essentially the complaint alleged that defendants and others had conspired to entrap plaintiff and had actually violated plaintiff's con-

---

2. Plaintiff has also alleged diversity jurisdiction in his complaint. As a result, even if he fails to establish his cause of action pursuant to *Bivens* or 42 U.S.C. § 1983 he might still be able to recover from some of the defendants on an ordinary tort theory. In respect to plaintiff's confinement in January and February,

1969, in Atlanta, the tort of false imprisonment is pertinent. In respect to search and seizure in Tennessee, the torts of trespass or conversion might be pertinent here to the extent this Court has venue over any claims which arose in Tennessee.

stitutional rights before and after his convictions. More specifically, he alleged these facts:

On or about January 10, 1969, in the northern district of Georgia, defendants and others entered into a conspiracy to deprive plaintiff of his constitutional rights and to railroad him to prison. In furtherance of the conspiracy, the defendants and others have committed several overt acts. On January 10, 1969, defendants caused plaintiff to be arrested on an illegal detainer warrant as plaintiff was released from the federal prison in Atlanta. Plaintiff was confined in a nearby county jail where he was physically abused. On January 28, 1969, the defendants acting under color of state law arranged for plaintiff's release on bail. Once freed on bail, defendants imprisoned petitioner in an apartment in Atlanta. At the apartment, the defendants, acting through an attorney, who is now deceased, and other associates, gave plaintiff a false driver's license, a credit card and stolen money orders and ordered plaintiff to cash the stolen money orders and to turn the cash received over to defendant Bales. On or about February 21, 1969, defendant Bales secretly planted approximately thirty stolen money orders on her person and then persuaded plaintiff to accompany her to Knoxville, Tennessee, at which place defendants planned to entrap and arrest plaintiff by using evidence which had been forged and planted by them. On February 22, 1969, and prior thereto, defendant Bales and her Atlanta associates falsely made and forged all of the stamp markings, the amounts, and all of the handwriting on the face of United States Postal money order No. 5,616,-352,675. On February 22, 1969, defendant Bales, while sitting in plaintiff's rented vehicle in front of an A & P food store, ordered plaintiff to take the forged money order into the A & P store, endorse it, and get it cashed.

When the store would not cash the money order, plaintiff left the store; and within twenty minutes, plaintiff was stopped in his car and arrested by Knoxville City Police Officer Cheatham. Subsequently, defendants Bales, Waggoner, a Knoxville city detective, and Kirksey, a federal postal inspector, caused plaintiff to be jailed while plaintiff's automobile was unlawfully searched by them. Thirty money orders and other incriminating evidence were found during the search. At plaintiff's criminal trial in Tennessee, a federal district judge ordered all evidence gained by the search suppressed. Nevertheless, plaintiff was convicted of uttering stolen money postal orders by the Tennessee federal court. Later, plaintiff was convicted in a Florida federal court for similar crimes. Plaintiff is now confined in the federal prison in Atlanta, where defendants, acting through their conspirators, continue to deprive plaintiff of his federal rights. Assuming plaintiff's allegations to be true and liberally construing those allegations, the supplemented complaint seemed to state a claim in some respects and venue seemed possible. Accordingly, a response from the defendants appeared necessary. Service of process was ordered. The defendants did respond. One defendant filed an answer, while the others filed motions to dismiss. Each defendant denied depriving plaintiff of any constitutional right and denied being a member of any conspiracy to deny plaintiff's rights. All defendants challenged the legal sufficiency of plaintiff's complaint. Two expressly objected to venue. Plaintiff soon filed rebuttals to defendants' attacks. On July 12, after careful consideration, this Court issued an order dismissing large parts of this case pursuant to Federal Rule 12. Since then the Court has denied plaintiff's motion for reconsideration and his request for appointed counsel. Accordingly, prior to this present

order, the case consisted of two remaining claims:

(1) a claim pursuant to 42 U.S.C. § 1983 for unlawful arrest in Atlanta against all defendants, except Taylor, a Florida federal postal officer, and

(2) a claim pursuant to 42 U.S.C. § 1983 and *Bivens* against Bales, a private citizen, and Kirksey, a Tennessee federal postal officer, for the allegedly unlawful search of plaintiff's automobile in Tennessee.[1]

It is these claims that are now dismissed.

 Since dismissal is predicated not on Rule 12 but 28 U.S.C. § 1915(d), some general discussion of section 1915 is appropriate before reviewing the reasons why dismissal in this case is warranted. Section 1915 provides the statutory basis for in forma pauperis proceedings in federal courts. Subsection (d) provides in part that "[t]he court may . . . dismiss the case [filed in forma pauperis] . . . if satisfied that the action is frivolous or malicious." The statute does not state how the court is to become so satisfied and does not define the words frivolous or malicious. Furthermore, to this Court's knowledge, neither the Supreme Court nor the Court of Appeals for this circuit has construed the statute in these respects. This Court, however, reads subsection (d) as a very broad grant of discretion to the courts regarding management of in forma pauperis actions. Subsection (d) is a grant of power to dismiss in situations where dismissal under Federal Rule of Civil Procedure 12 might be improper. *See* Cruz v. Beto, 405 U.S. 319, 328, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1971) (Rehnquist, J. dissenting); Boag v. Boies, 455 F.2d 467 (9th Cir. 1972); Conway v. Oliver, 429

F.2d 1307 (9th Cir. 1970); Allison v. Wilson, 434 F.2d 646 (9th Cir. 1970); Allison v. California Adult Authority, 419 F.2d 822 (9th Cir. 1969); Diamond v. Pitchess, 411 F.2d 565 (9th Cir. 1969); Urbano v. Sondern, 370 F.2d 13 (2d Cir. 1966), aff'g 41 F.R.D. 355 (D. Conn.1966); Fletcher v. Young, 222 F. 2d 222, 224 (4th Cir. 1955).

There are compelling reasons for allowing courts broader dismissal powers in forma pauperis suits—especially damage suits brought by convicted prisoners—than in other cases. Persons proceeding in forma pauperis are immune from imposition of costs if they are unsuccessful; and because of their poverty, they are practically immune from later tort actions for "malicious prosecution" or abuse of process. Thus indigents, unlike other litigants, approach the courts in a context where they have nothing to lose and everything to gain. The temptation to file complaints that contain facts which cannot be proved is obviously stronger in such a situation. For convicted prisoners with much idle time and free paper, ink, law books, and mailing privileges the temptation is especially strong. As Justice Rehnquist has noted, "Though [an inmate] may be denied legal relief, he will nonetheless have obtained a short sabbatical in the nearest federal courthouse." Cruz v. Beto, 405 U.S. 319, 327, 92 S.Ct. 1079, 1084, 31 L.Ed.2d 263 (1972) (dissenting).

The Federal Rules of Civil Procedure are inadequate to protect the courts and defendants—who it should be remembered pay for their defense—from frivolous litigation from indigent prisoners. The Rules are liberal; they are designed so that most cases will actually go to trial if the parties so desire. Under current standards, Rule 12 motions to

---

1. Since plaintiff has alleged diversity jurisdiction, it is possible that the Tennessee search and Georgia arrest might be the basis for ordinary tort actions as well as civil rights actions. Most of the same

factual and legal problems would occur under either approach; and although the Court regards this case as a civil rights action, it has not ignored the plain tort possibilities.

dismiss are rarely properly granted. *See* Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); Haines v. Kerner, 404 U.S. 519 (1972); Campbell v. Beto, 460 F.2d 765 (5th Cir. 1972).[2] The liberal approach of the Rules is probably desirable, but the rules contemplate litigants who are limited by the realities of time and expense. They also contemplate litigants with a basic respect for accuracy. As Judge Duniway has written, "[w]e know from sad experience with habeas corpus and 2255 cases that imprisoned felons are seldom, if ever, deterred by the penalties of perjury. They do not hesitate to allege whatever they think is required in order to get themselves even the temporary relief of a proceeding in court." Weller v. Dickson, 314 F.2d 598, 602 (9th Cir. 1963) (concurring opinion). A reasonably intelligent prisoner with a willingness to misrepresent facts can often avoid both 12b dismissal and summary judgment, although he actually has no chance of eventual success in his suit. Even if summary judgment can be won by a defendant, much expense may already have been suffered by him in retaining counsel to conduct the defense.

■■■ It is plain to this Court that courts need an extra measure of authority when faced with actions proceeding in forma pauperis—particularly where the action is brought by a prisoner seeking damages. And it is this court's conclusion that Congress has granted that extra authority by enacting 28 U.S.C. § 1915(d). In light of 1915(d)'s general purpose, the specific term "frivolous" refers to an action in which the plaintiff's realistic chances of ultimate success are slight. *See, e.g.*, Urbano v. Sondern, 370 F.2d 13 (2d Cir. 1966),

aff'g 41 F.R.D. 355 (D.Conn.1966); Weller v. Dickson, 314 F.2d 598 (9th Cir. 1963) (Duniway, J. concurring). This is not to say that such suits should not be allowed filed or be dismissed abruptly or that a court should readily assume frivolity because it is prisoner filed. To the contrary, it is incumbent upon the court to develop the case and to sift the claims and known facts thoroughly until completely satisfied either of its merit or lack of same. In the former instance, the case should proceed with the assistance of the court. However, upon reasonable effort where the contrary appears, it should be dismissed. Here, the Court has endeavored to apply this leavening process and what has surfaced is found wanting.

■■ In concluding that plaintiff's claim arising out of the Tennessee search is frivolous, this Court has relied largely on the conclusion of United States District Judge Middlebrooks at plaintiff's criminal trial in Florida. Relying on Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), Judge Middlebrooks held, after a full hearing at which plaintiff testified and was represented by counsel, that the search of plaintiff's automobile in Tennessee was not unconstitutional.[3] If Judge Middlebrooks' order is not conclusive here in the sense of collateral estoppel, it is at least substantial evidence that a 42 U.S.C. § 1983 or *Bivens* claim arising from the Tennessee search is frivolous. *Cf.* Cruz v. Beto, 405 U.S. 319, 329, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (dissenting opinion). This Court realizes that United States District Judge Taylor at plaintiff's Tennessee trial did order evidence gained from the search suppressed. A reading of

---

2. Although each of these recent decisions reversed a lower court dismissal of a prisoner's civil rights action, they are not contrary to the dismissal of the present case. First, this case, unlike the others, is not being dismissed before it has gotten off the ground. Second, this case, unlike

the others, is dismissed pursuant to 28 U.S.C. § 1915(d), not Rule 12.

3. This Court secured and has read the transcript of the hearing which led to Judge Middlebrooks' decision and concurs with his opinion.

Judge Taylor's order, however, indicates that he did not reach a decision on the actual validity of the search itself. In Tennessee, the United States Attorney's reply to plaintiff's motion to suppress was a statement that the prosecution had no intention of introducing any of the evidence gained by the search at the trial. Therefore, Judge Taylor's order to suppress was actually a consent order and does not necessarily represent his studied opinion and finding that the Tennessee search of plaintiff's automobile was unconstitutional.

██ In respect to the claim arising from his arrest and imprisonment in Atlanta in 1969, the Court regards the claim as frivolous because plaintiff's allegations simply strain credulity. He states that his arrest on a detainer warrant as he left the Atlanta federal prison was unlawful, but he does not allege any facts which indicate that the arrest was in fact unlawful. The detainer is presumptively lawful and plaintiff has thus far failed to demonstrate its invalidity. He complains in a vague way about being abused at a local jail. And he complains that after he was freed on bail he was imprisoned in an Atlanta apartment. Frankly, this Court doubts that plaintiff can prove any of these charges. It should further be noted that with the possible exception of defendant Bales, none of the named defendants in this action are alleged to have personally been involved in the Atlanta arrest and imprisonment, but are only interested officers. Thus, to be ultimately successful on this claim, he must not only prove the underlying facts; he must prove an actual conspiracy between the named defendants, two Knoxville police officers, two federal postal inspectors—one in

Tennessee and one in Florida, a female employee of Bell Telephone who lives in Atlanta, and the persons who allegedly did unlawfully arrest, abuse, and imprison plaintiff in Atlanta. This the Court believes will be almost impossible for plaintiff to do.[4] Thus far, the plaintiff has been unable to allege any facts or overt acts which would support a legal finding of any such conspiracy in spite of repeated opportunities to do so. Like rape, the only thing the defendants can do is deny its existence, thus effectively precluding a summary judgment.

Even if the plaintiff could demonstrate the criminal guilt of defendant Bales or any action by her leading to his arrest, the failure of the government to prosecute her or even the use of her as an informant, tipster, or witness at trial against plaintiff does not show a conspiracy to violate plaintiff's civil rights. To the contrary, arrest and conviction by such tactics are recognized lawful police methods and not violative of any civil right. Under such circumstances, the Court does not assume lack of merit. To the contrary, in order to allow the case to proceed on this aspect, the Court would have to assume merit by piling inference upon inference. This it should not do. *See, e.g.,* United States v. Ross, 92 U.S. 281, 23 L.Ed. 707 (1875); Tyrrell v. Dobbs Inv. Co., 337 F.2d 761 (10th Cir. 1964); Dreijer v. Girod Motor Co., 294 F.2d 549, 554 (5th Cir. 1961); Klein v. Continental Emsco Co., 310 F.Supp. 413 (D.C.Tex.1970), aff'd 445 F.2d 629 (5th Cir. 1971). The Court sees no way that plaintiff could establish the violation of a civil right or a conspiracy on the part of the defendants to do so in order to prevail in a § 1983 claim.

4. Plaintiff has been an avid litigator in this court (a total of 29 docketed cases thus far, of which 3 are still pending) and others, but he has apparently never been successful in a case in which he was opposed. His past lack of success is relevant to consideration of his chances of ultimate success here. *See* Cruz v. Beto, 405 U.S. 319, 329, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (Rehnquist, J. dissenting).

Since both the Tennessee search claim and the Georgia arrest and imprisonment claim are frivolous, this case is accordingly dismissed. 28 U.S.C. § 1915.

It is so ordered.